# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JEANA RENOTTA HINES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 5:24-cv-01047-JHE |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPNION[1]

Plaintiff Jeana Renotta Hines ("Hines") seeks review pursuant to 42 U.S.C. § 405(g) and § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and Disability Insurance Benefits ("DIB"), as well as Supplemental Security Income ("SSI"). (Doc. 1). Hines timely pursued and exhausted her administrative remedies. Accordingly, this case is ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings.

## I. Factual and Procedural History

On July 16, 2020, Hines filed a protective application for a period of disability and DIB and an application for SSI, alleging disability beginning on August 13, 2016. (Tr. 22, 533–545).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 18).

The Commissioner initially denied Hines' claims on February 19, 2021. (Tr. 170–171). Hines requested a hearing before an ALJ (tr. 281–82). The ALJ held a hearing and denied Hines's claim on July 22, 2022. (Doc. 191–215). Hines sought review by the Appeals Council, which vacated the hearing decision on January 4, 2013, and remanded for reconsideration. (Tr. 216–21). The ALJ entered a fully favorable decision on June 16, 2023, finding Hines disabled from her alleged onset date of August 13, 2016. (Tr. 222–32).

On its own motion, the Appeals Council elected to review the hearing decision. (Tr. 234–39). On August 4, 2023, the Appeals Council again vacated the ALJ's decision and remanded the case for further proceedings. (*Id.*). The Appeals Council found that the ALJ's decision failed to account for a gap in Hines's medical records from September 2014 until August 2019. (Tr. 236). The Appeals Council instructed the ALJ to supplement the administrative record by obtaining additional evidence and to reassess Hines's claims in light of the expanded record. (Tr. 238–39).

Following this second remand, the ALJ held another hearing on November 27, 2023. (Tr. 45–75). After the hearing, Hines amended her disability onset date to September 19, 2018. (Tr. 22, 639, 779–80). On March 12, 2024, the ALJ entered an unfavorable decision denying Hines's claims. (Tr. 19–44). Hines again sought review by the Appeals Council, but it denied her request on June 10, 2024. (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner. Hines initiated this action on August 1, 2024. (Doc. 1).

Hines was 58 years old on the date the ALJ rendered her decision. Hines has past relevant work as a childcare attendant and administrative clerk. (Tr. 33).

## II. Standard of Review[2]

The court's review of the Commissioners decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143,1145–46 (11th Cir. 1991).

---

[2] In general, the legal standards applied are the same whether a claimant seeks SSI or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Social Security Administration ("SSA");

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

impairment. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (cleaned up).

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Hines had not engaged in substantial gainful activity since September 19, 2018, her amended alleged onset date. (Tr. 26). At Step Two, the ALJ found Hines has the following severe impairments: fibromyalgia, systemic lupus erythematosus ("SLE"), and asthma. (Tr. 26). At Step Three, the ALJ found Hines does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28).

Before proceeding to Step Four, the ALJ determined Hines's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. See 20 C.F.R. § 404.1545(a)(1). The ALJ determined Hughes has the RFC

> to lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk with normal breaks for six hours in an eight-hour workday; sit with normal breaks for six hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance on even terrain; occasionally stoop, kneel, crouch, and crawl; frequent bilateral overhead reaching; occasional exposure to extreme cold, extreme hot, vibrations, fumes, odors, dusts, gases and poor ventilation; and no work at unprotected heights.

(Tr. 28). At Step Four, the ALJ determined Hines could perform her past relevant work as a childcare attendant and administrative clerk. (Tr. 34). Therefore, the ALJ did not proceed to Step

Five and instead found Hines had not been under a disability from her alleged onset date through the date of the ALJ's decision. Accordingly, the ALJ denied her claim.

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Williams*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Hines argues that the ALJ failed to properly evaluate her complaints of pain consistent with the Eleventh Circuit pain standard. (Doc. 12 at 5). The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and

substantial evidence, *see Foote*, 67 F.3d at 1561–62.  An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence.  *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective.  *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029 at *3–10.  The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence.  *See* 20 C.F.R. § 404.1529(c)(3)–(4); SSR 16-3p, 2016 WL 1119029 at *3–10.  If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so."  *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002).  "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy."  *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011).  *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

At the hearing, Hines testified that her symptoms included extreme fatigue, muscle aches, and an inability to stand on her feet, walk, or "anything like that" for long periods of time.  (Tr. 54).  Hines stated that she experienced daily pain of varying degrees: "when the pain is different from the ordinary, then it's very debilitating and you never know really, when you wake up in the morning, exactly how the pain is going to go for the day."  (Tr. 56).  Hines testified that severe pain left her unable to "really function."  (*Id.*).  Hines stated that she could stand and sit for only

about 45 minutes at a time, could lift and carry "maybe 20 pounds, maybe a little more," and had to lie down at least twice a day for about 45 minutes to an hour at a time. (Tr. 57–58).

Citing the appropriate legal standard, the ALJ determined that Hines's testimony met the first prong of the pain standard because her "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 29). However, the ALJ found that Hines did not meet the second prong because her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record . . . ." (*Id.*). Specifically, the ALJ pointed to medical records showing that Hines's fibromyalgia or lupus had been present since 2012 and that a visit in August 2019 following a five-year-long gap in treatment records showed that Hines was "doing well." (*Id.*). The ALJ highlighted subsequent treatment, including objective examinations, inconsistent with disabling limitations. (*Id.*). The ALJ also pointed to Hines's activities of daily living and self-reports of milder limitations than her hearing testimony indicated. (Tr. 31). Ultimately, the ALJ concluded that the evidence, "including the claimant's own reported abilities/activities, the claimant's reported good control of symptoms when seen for care, the conservative course of care documented, and the good objective findings on exams," showed that Hines's "symptoms are not of the frequency, duration, and/or severity she alleges or to [sic] not limit her greater than shown in the above finding." (Tr. 31–32).

Hines points to three errors the ALJ allegedly made in applying the pain standard. First, Hines objects to the ALJ's reliance on the treatment record gap to undermine her testimony. (Doc. 12 at 8–10). Second, Hines contends that the ALJ misconstrued the medical record. (*Id.* at 10–13). Finally, Hines argues that the ALJ mischaracterized her testimony regarding her reported daily activities. (*Id.* at 13–16). Although the ALJ did not err in considering the gap in the medical

8

record, the ALJ's factual errors concerning the medical record require remand. The ALJ must reassess Hines's testimony, including her testimony concerning her daily activities, in light of a factually accurate view of the record.

### A. The ALJ Appropriately Considered the Gap in the Medical Record

Hines takes issue with the ALJ's "heavy" reliance on the gap in treatment records from 2014 to August 2019 to discredit Hines's testimony. (Doc. 12 at 8–9). Hines does not contest that this gap exists. Rather, Hines testified that the gap in *records* was not a gap in *treatment*; the rheumatologist she had been seeing, Dr. Michael Dick, "got into some legal issues with some of the patients" and ultimately closed his practice without providing Hines with her medical records. (Tr. 55). Nevertheless, Hines testified that she continued to see Dr. Dick at some unspecified point during this time period. (Tr. 62).

Contrary to Hines's characterization, the ALJ does not appear to have "heavily" relied on the gap in treatment records to undermine Hines's reported symptoms. Instead, the gap in treatment records was one of the reasons why the Appeals Council vacated the ALJ's previous fully favorable decision. The ALJ noted this at the hearing, stating: "I've [been] remanded for this issue so I will have to address it in this case . . . and, without something to support it, we're looking at another, another date." (Tr. 63). The ALJ then gave Hines the opportunity to provide records to fill in the gap, which Hines was apparently unable to do. Rather, Hines voluntarily amended her alleged onset date to eliminate much of the *relevance* of the evidentiary gap to her claim. But the gap remains.

The closest Hines comes to filling the evidentiary gap is by pointing to pharmacy records "consistent with [her] testimony of her ongoing treatment from Dr. Dick during" the period from 2014–2019. (Doc. 12) (citing tr. 770–74). The cited evidence does support medications Dr. Dick

9

had prescribed to Hines continued to be dispensed from April 2014 until April 2019, including hydrocodone, tramadol, hydroxychloroquine, gabapentin, clonazepam, trazadone, and prednisone. (*See* tr. 770–74). But the ALJ is correct that there are no treatment records that would indicate what was going on with Hines's symptoms during this time period. Having provided no evidence that would show follow-up visits during the evidentiary gap, Hines cannot complain that the ALJ acknowledged that "the rheumatology records end in 2014 . . . without follow-up for years since." (Tr. 29).

Related to the treatment gap, Hines also objects to the ALJ's determination that no record evidence supports the worsening of any condition at Hines's amended alleged disability onset date. (Doc. 12 at 10). Hines points to the fact that the pharmacy records indicate that she was prescribed prednisone on that date "which is indicative of a flare up or worsening of her symptoms." (*Id.*). Leaving aside that it is pure speculation to conclude without any medical context what a prescription might indicate, the prescription records show that Hines was prescribed prednisone on July 22, 2014 (tr. 770); November 12, 2015 (tr. 771); March 5 and April 1, 2016; and August 21, 2017 (tr. 774). While the records also show that Hines was prescribed prednisone on her amended alleged onset date of September 19, 2018, (tr. 774), Hines does not account for any of the times she was prescribed prednisone well before the amended alleged onset date. It was not error for the ALJ to decline to draw the conclusion Hines draws given this record.

### B. The ALJ Misconstrued Dr. Fernandez's Records

Hines's allegations of error in interpreting the medical evidence are that "the records consistently document [her] reports of joint pain, swelling, and fatigue." (Doc. 12 at 11). Hines highlights three categories of evidence she says that the ALJ "ignored, overlooked, or misconstrued": records from an August 2019 rheumatology visit with Dr. Robert E. Hunt, records

10

from Cullman Internal Medicine, and records from Dr. Celia Fernandez at WareHouse Primary Care. (Doc. 12 at 11–13). Although the ALJ does not appear to have significantly mischaracterized the other records, Hines is correct that the ALJ's description of Dr. Fernandez's WareHouse Primary Care records is inaccurate.[4]

Hines appears to have seen Dr. Fernandez, a rheumatologist, for the first time on April 21, 2021, at the referral of her primary care physician on complaints of joint pain. (Tr. 970–74, 979). Hines sought further treatment from Dr. Fernandez from 2022 through 2023. (Tr. 1279–1302, 1403–50). In her opinion, the ALJ specifically highlighted treatment records from 2023:

> The medical records of Celia Fernandez, MD, a rheumatologist, for May-October 2023 include follow-ups at two-month intervals June, August, and October that include the objective exams routinely including the claimant in no acute distress and musculoskeletal exams unremarkable, including no tenderness of any joints of the shoulders, hips, knees, feet, or digits and full extension and flexion of the back, and grossly intact neurological exams. The claimant reports being primary caretaker for her mother, of doing "ok" with activities of daily living, and of doing good/well between visits. The good exam findings remained unchanged even after Plaquenil use was decreased from twice daily to once daily (Exhibit B22F).

(Tr. 30).

Dr. Fernandez's records tell a different story. While the ALJ is correct that Hines's June examination was relatively normal (*see* tr. 1432), Dr. Fernandez expressly found at the August visit that Hines had "+tenderness to the left knee to palpitation and DROM [decreased range of motion] secondary to pain" (tr. 1422). At the October 2023 visit, Dr. Fernandez again found

---

[4] Hines's critique of the ALJ's interpretation of how the ALJ assessed the remainder of the records is mostly that Hines reported various symptoms to her treating physicians and that her reports are consistent with her testimony. (*See* doc. 12 at 11–12). Because the ALJ must make a new credibility determination, the ALJ must necessarily reassess Hines's reports. The undersigned expresses no view as to how the ALJ should weigh the remainder of the records on remand after reassessing the WareHouse Primary Care records.

"+tenderness to the left knee to palpitation and DROM secondary to pain." (Tr. 1407). This directly conflicts with the ALJ's assessment of "unremarkable" exams showing "no tenderness of . . . knees . . . ." (Tr. 30). *See Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 354 (11th Cir. 2018) (rejecting an ALJ characterization of "minimal" objective findings when the medical evidence showed significant abnormalities). Further, contrary to the ALJ's implication that Hines's condition did not worsen after reducing Plaquenil use, Hines reported "increased pain since decreasing [Plaquenil] from bid to daily" on each visit after May 9, 2023 (when Dr. Fernandez decreased her Plaquenil use due to "levels [that] were not safe" (tr. 1403, 1447))—even asking in August 2023 for Plaquenil to be increased again because it "was helping her joint pain and stiffness significantly." (Tr. 1403, 1418, 1428).

    The ALJ's assessment of Dr. Fernandez's records rested on a factual error. Thus, it was not substantial evidence contradicting Hines's testimony. The undersigned cannot determine whether the ALJ would have come to the same conclusion concerning Hines's testimony about her subjective symptoms had the ALJ not mischaracterized Dr. Fernandez's records. It is certainly possible that the ALJ would have done so, but it is also possible that the ALJ would have placed more weight on objective examination findings by the specialist treating Hines for joint pain. The court's role is not to weigh that evidence. *Walden*, 672 F.2d at 838. And since a new credibility determination giving more credence to Hines's statements might result in a different RFC, the undersigned cannot say that the ALJ's error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding error harmless when it would not change the outcome). Accordingly, remand is warranted. On remand, the Commissioner should reassess Hines's testimony and other statements concerning her limitations in light of a factually supported view of the record.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Hines's claim for SSI and a period of disability and DIB is **REVERSED**, and this action is **REMANDED**.  A separate order will be entered.

DONE this 29th day of September, 2025.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE